**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles GLOVER, Defendant–Appellant.**

No. 93–5547.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1994.

Decided April 12, 1994.

Joseph C. Murphy, Jr., Asst. U.S. Atty., Memphis, TN (argued and briefed) Daniel A. Clancy, Asst. U.S. Atty., Jackson, TN, for U.S.

Melvin G. Turner, Memphis, TN (argued and briefed) for Charles T. Glover.

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennes-

Before: MARTIN and BATCHELDER, Circuit Judges; and HULL, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Charles Glover appeals his conviction by a jury on charges of possession of cocaine with the intent to distribute, carrying and using a firearm in relation to a drug trafficking crime, and possession of an unregistered sawed-off shotgun. Glover argues that the district court committed several plain errors at trial, contends that the evidence presented was insufficient to support the jury's verdict, and challenges the district court's denial of his motion for a new trial. For the following reasons, we affirm Glover's convictions.

I

Shortly after nightfall on December 12, 1991, officers with the Organized Crime Unit of the Memphis Police Department executed a search warrant at a house located at 225 Cedar Avenue in Memphis, Tennessee. As the officers ascended the stairs leading to the front porch, they could see through the glass front door and into the lighted living room. Glover, the room's only occupant, was seated on the couch and talking on the telephone.

After Glover ignored the officers' repeated requests for entry, they forced their way into the residence. Glover immediately dropped the telephone, emitted a stream of curses, and ran into the kitchen. He was apprehended moments later.

The officers subsequently searched the house. In a bag underneath the kitchen sink, the officers found $6,800.00 in cash. The stove's broiler pan concealed approximately forty-seven grams of cocaine. A pager sat on the kitchen table and a digital scale sat on a shelf above the sink. In the living room, the officers found a loaded sawed-off shotgun sticking out from underneath the couch and two shotgun shells less than four feet away from the weapon. The search also produced a utility bill addressed to Glover, travel documents bearing Glover's name,

see, sitting by designation.

men's clothing, and a watch and ring belonging to Glover.

On January 13, 1992, a federal grand jury charged Glover with one count of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), one count of carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and one count of possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). After Glover's first trial ended in a mistrial, a second trial began on October 5. Following three days of proceedings, a jury found Glover guilty of all charges. On April 2, 1993, the district court sentenced Glover to a term of imprisonment of eleven years and nine months. This timely appeal followed.

## II

■ Glover challenges his conviction, maintaining first that the district court erred when it dismissed an ill juror and allowed the eleven remaining jurors to deliberate to a verdict. Several hours after the jury began to deliberate the charges against Glover, one of the jurors reported that she felt ill. In the presence of counsel for both parties, the district court conferred with a Public Health Service nurse and with the sick juror. After conducting a thorough inquiry, the district court determined that the juror was unable to continue to serve and excused her. Jury deliberations continued with eleven jurors pursuant to Federal Rule of Criminal Procedure 23(b), which provides, in relevant part, "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." FED.R.CRIM.P. 23(b).

The analysis under Rule 23(b) involves two distinct questions: first, did the district court err in excusing the juror; and second, did the district court abuse its discretion in permitting the jury to deliberate to a verdict with only eleven members. Glover does not challenge the district court's decision to excuse the ill juror. Instead, relying largely on the advisory committee notes to Rule 23(b), Glover argues that, given the limited duration and complexity of his trial, the district court abused its discretion by continuing the jury deliberations with fewer than twelve jurors. In addressing the 1983 amendment to Rule 23(b) that authorized eleven-member juries, the advisory committee commented:

> The amendment provides that if a juror is excused after the jury has retired to consider its verdict, it is within the discretion of the court whether to declare a mistrial or to permit deliberations to continue with 11 jurors. If the trial has been brief and not much would be lost by retrial, the court might well conclude that the unusual step of allowing a jury verdict by less than 12 jurors absent stipulation should not be taken. On the other hand, if the trial has been protracted the court is much more likely to opt for continuing with the remaining 11 jurors.

FED.R.CRIM.P. 23(b) note. Glover contends that this commentary establishes that a three-day trial such as his is not the type of protracted trial contemplated by the drafters of Rule 23(b).

In suggesting that application of Rule 23(b) is limited only to exceptionally lengthy or complex trials, however, Glover overlooks a central premise of the provision: the decision to continue deliberations with an eleven-member jury falls "within the sound discretion of the trial court." *United States v. Ramos,* 861 F.2d 461, 466 (6th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 820 (1989); *see also* FED.R.CRIM.P. 23(b) ("in the discretion of the court a valid verdict may be returned by the remaining 11 jurors"). As the Eighth Circuit has observed, "the rule provides no limitation in terms of a trial's length, and the Notes themselves give no definitive guidance. Instead, the matter is left to the discretion of the trial court." *United States v. Armijo,* 834 F.2d 132, 135 (8th Cir.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988); *see also United States v. O'Brien,* 898 F.2d 983, 986 (5th Cir.1990) ("Rule 23(b) does not limit its application to lengthy or complex trials").

While allowing a jury verdict by less than twelve jurors is indeed an "unusual step," on the facts of this case we conclude that the

trial court was within its discretion to permit deliberations to continue with eleven jurors. Glover's trial entailed a substantial expenditure of judicial resources. *See United States v. Egbuniwe,* 969 F.2d 757, 763 (9th Cir.1992) (noting that a retrial "would have involved a substantial expenditure of tax dollars and the consumption of judicial resources"); *United States v. Gabay,* 923 F.2d 1536, 1543 (11th Cir.1991) (recognizing that expenditure of resources is a factor in Rule 23(b) inquiry). Lasting for three days, the trial involved testimony from more than twenty witnesses as well as numerous exhibits. In these circumstances, we find that the district court did not err in refusing to declare a mistrial.

### III

■ Glover next contends that the district court committed reversible error by admitting into evidence testimony concerning the travel documents, men's clothing, watch, and ring found at 225 Cedar Avenue. According to Glover, this evidence was more prejudicial than probative and should have been excluded under Federal Rule of Evidence 403. Because Glover failed to object to the admission of this testimony at trial, our review is confined to "a search for plain error." *United States v. Morrow,* 977 F.2d 222, 228 (6th Cir.1992) (en banc) (citing FED.R.CRIM.P. 52(b)), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

In this case, we cannot conclude that the district court's admission of this now-disputed testimony rises to the level of plain error. Glover's counsel initially introduced these matters to the jury during his opening statement. Moreover, Glover himself put the question of whether he lived at 225 Cedar Avenue at issue. *Cf. United States v. Tinker,* 985 F.2d 241, 242–43 (6th Cir.1992) (district court properly admitted evidence of other crimes where defendant "opened up matter"), *cert. denied,* —— U.S. ——, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993). Under these circumstances, the admission of testimony suggesting that Glover received mail and maintained possessions at the residence cannot be considered plain error.

### IV

We turn next to Glover's allegation that the district court repeatedly made prejudicial remarks that demonstrated judicial bias. Contending that the court's display of bias warrants reversal of the guilty verdict, Glover offers three statements as evidence of the judge's predisposition against him.

■ The first of these allegedly prejudicial comments came during a sidebar conference out of the jury's presence. On cross-examination, defense witness Bonnie Jean Scott gave an answer inconsistent with her earlier sworn testimony. When Scott claimed that reviewing a transcript of her prior testimony failed to refresh her recollection, the prosecutor asked Scott to read the relevant lines from the record aloud. Glover's counsel objected, questioning in a sidebar discussion "the purpose of having her read it." The district court replied, "[s]he might catch on fire." Trial Transcript at 304–05. Glover contends that this judicial assessment of Scott's truthfulness tainted his trial. We disagree.

While a district court judge is expected to remain an impartial observer, this Court has recognized that "[m]uch of the concern about an otherwise inappropriate judicial act or remark is neutralized by the absence of the jury." *Morrow,* 977 F.2d at 225; *see also United States v. Smith,* 928 F.2d 740, 741–43 (6th Cir.) ("to the extent the trial judge's comments were otherwise objectionable, they were made in the main at the sidebar and therefore out of hearing of the jury"), *cert. denied,* —— U.S. ——, 112 S.Ct. 159, 116 L.Ed.2d 124 (1991). Here, the jury was not privy to the district court's comment. While the judge's remark displayed an unfortunate frustration with Scott's apparent prevarication, Glover is unable to overcome the "high hurdle" of demonstrating that "undue interference occurred." *Morrow,* 977 F.2d at 225. Accordingly, we decline to find that this statement rises to the level of reversible error.

■ The remaining two comments submitted by Glover as evidence of outright bias on the part of the trial judge were made in the jury's presence. The first exchange took

place during the direct examination of Jerry Harwell, a supervisor of customer accounts with Memphis Light, Gas, and Water. When Harwell began to testify about the termination of service at 225 Cedar Avenue, Glover objected, claiming that the testimony was hearsay because Harwell did not have the relevant work order in front of him. In ruling on Glover's objection, the district court apparently uttered a remark that Glover now challenges as prejudicial.[1] Glover, however, fails to identify which of the court's statements he finds objectionable or to explain how this comment reflects judicial bias. As our review of this discourse unearths no prejudicial remarks, we conclude that the colloquy was free of judicial bias.

■ The final offending statement came during the redirect examination of defense witness Scott. With the jury present, the following dialogue between defense counsel, the witness, and the district judge took place:

Mr. Turner: Now, Ms. Scott, was this Charles' dope they found in your house?

Ms. Scott: Yeah.

Mr. Turner: You didn't understand my question?

Ms. Scott: What did you say?

The Court: She heard you.

Ms. Scott: No, I didn't.

Mr. Turner: Do you think she was saying it was Charles' dope?

The Court: I'm going by what she said.

Ms. Scott: I thought you said that this was dope found in my house.

Mr. Turner: What I asked you, did this dope belong to Charles?

Ms. Scott: Oh, no, huh-huh.

Trial Transcript at 316. Glover argues that the judge's comments implied agreement with Scott's initial response and prejudiced the jury with regard to Glover's culpability. We are not persuaded.

A district judge's interjection into a trial is "common and proper when there is a need for clarification in a lengthy or complex trial, when the witness proffers incredible testimony that is not adequately probed by counsel, or when the witness has become confused." *United States v. Seago*, 930 F.2d 482, 492 (6th Cir.1991). Moreover, a trial judge "may analyze the evidence, comment upon it, and express his [or her] views with regard to the trial testimony of the witnesses." *Id.* (quoting *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), *overruled on other grounds, Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 77, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)). By commenting upon Scott's initial response, the district court attempted to clear up defense counsel's apparent confusion regarding the witness' testimony. At no time did the judge go so far as to express his view of Scott's response. As interjections of this nature fall within the district judge's discretion, we decline to conclude that the trial judge's comments constituted reversible error.

### V

■ Glover also challenges the district court's denial of his motion for a judgment of acquittal on Count Two, claiming that the evidence introduced at trial was insufficient

---

1. The following colloquy took place between defense counsel Turner, AUSA Murphy, witness Harwell, and the district court:

Mr. Turner: If he doesn't have any records, I would object unless he says that one doesn't say but another one, I would like to see the record.

The Court: Mr. Murphy, show him the record first.

Mr. Murphy: Judge, I think what the witness was saying is that he didn't have that record.

The Court: He wants to see it. Show it to him.

Mr. Turner: He was saying I don't have the record, I'm objecting to the hearsay.

The Court: Wait a minute, we got too many people talking.

Mr. Murphy: Mr. Harwell, you were just showing me a piece of paper that is a copy of a document that you brought today?

Mr. Harwell: This is a copy of the work order that was dispatched to have services taken out of Mr. Glover's name.

Mr. Murphy: Okay. And what was the date of that?

The Court: Let's wait and be sure. Do you want to have these records [or] not?

Mr. Turner: Yes, sir, of course I want to see the record. Yes, sir, I want to see it.

Trial Transcript at 157–58.

to sustain his using and carrying a firearm conviction. While Glover moved for a judgment of acquittal upon completion of the government's case in chief, he failed to renew this motion at the close of all the evidence. This default circumscribes our already narrow review. As this Court has recognized, "[a]bsent a manifest miscarriage of justice, [the defendant's] failure to renew his motion is a waiver of the right to challenge the sufficiency of the evidence on appeal." *Morrow,* 977 F.2d at 230; *see also United States v. Williams,* 940 F.2d 176, 180 (6th Cir.) (failure to renew motion "constitutes a waiver of an objection to the sufficiency of the evidence"), *cert. denied,* — U.S. —, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991). Because Glover is unable to demonstrate a manifest miscarriage of justice here, his insufficiency of the evidence claim is barred.

## VI

◼ Finally, Glover contends that the district court erred in denying his motion for a new trial on the grounds of newly discovered evidence. Nearly five months after he was convicted, Glover filed a motion for a new trial, claiming that new evidence would prove that the cocaine found at 225 Cedar Avenue belonged not to him, but to an individual by the name of Johnnie Lee Morgan. In support of this motion, Glover proffered an affidavit from Morgan, who professed to have had a key to the residence that he used on the night before the police search to gain access to the kitchen and secrete the cocaine in the stove. During Glover's trial, Morgan, through his attorney, asserted his privilege against self-incrimination. Following Morgan's conviction and incarceration on separate drug-related charges, however, Morgan apparently changed his mind and agreed to testify on Glover's behalf.

◼ Pursuant to Federal Rule of Criminal Procedure 33, a district court may grant a new trial "if required in the interest of justice." As this Court has made clear, "[t]he decision to grant or deny such a motion rests within the discretion of the district court and should not be reversed absent a showing of abuse of discretion." *United States v. Turner,* 995 F.2d 1357, 1364 (6th Cir.), *cert.*

*denied,* — U.S. —, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993). In order to merit a new trial, Glover was required to establish each of the four elements set forth in *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir.1986), *cert. denied,* 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987):

> (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.

In applying this four-part test, we recognize that motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution. *Seago,* 930 F.2d at 488.

Here, Glover is unable to establish that the evidence offered by Morgan "was discovered after the trial" and thus he fails to carry his burden of proof. Glover acknowledges that he was well aware of Morgan's testimony prior to trial. As Glover's counsel conceded at the sentencing hearing:

> I knew that he (Morgan) existed, the fact of the matter is that we subpoenaed him back in June the 29th of '92 to appear in court.... [H]e had a trial going on or had been convicted. And Mrs. Ferguson was his attorney. I spoke with her about him, [and she said] I'm not going to let you put him on, if you put him on, you know, he is going to plead the Fifth.

April 1, 1993 Hearing Transcript at 8–9. While Morgan's testimony may have been newly available, it was not in fact "newly discovered evidence" within the meaning of Rule 33. In so holding, this Court is in accord with other circuits that have addressed this issue. *See, e.g., United States v. Lockett,* 919 F.2d 585, 591 (9th Cir.1990) ("[W]hen a defendant who has chosen not to testify comes forward to offer testimony exculpating a codefendant, the evidence is not 'newly discovered.'"); *United States v. DiBernardo,* 880 F.2d 1216, 1224–25 (11th Cir. 1989) (where defendants were "well aware" of witness' proposed testimony prior to trial, "the testimony cannot be deemed 'newly discovered evidence' within the meaning of Rule 33"); *United States v. Jacobs,* 475 F.2d 270, 286 n. 33 (2d Cir.) ("a court must exercise

great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a codefendant, since convicted, had availed himself of his privilege not to testify"), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).

Even if Glover were able to demonstrate that Morgan's testimony was newly discovered, he cannot prove that the evidence would likely produce an acquittal if the case were retried. At trial, numerous witnesses testified that the cocaine found in the stove could not belong to Glover because he did not reside at 225 Cedar Avenue. This testimony, coupled with Glover's own denial of guilt, proved unavailing. We find it highly unlikely that largely comparable testimony from a readily-impeachable convicted drug dealer like Morgan would convince a jury otherwise. Accordingly, the district court acted well within its discretion in finding that Glover failed to carry the burden of proving the need for a new trial. We therefore reject Glover's final assignment of error.

## VII

For the reasons provided herein, the judgment of the district court is affirmed.